

RECEIVED

MAR 1 3 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MAR 1 3 2008

Carla Hill
**Plaintiff(s)**

Case No. 07C 6835

**V.**
John E Potter, Postmaster General
Zerex Veal, James Ascauldo, Karen Inyskers,
**Defendant(s)** Stephen Schneider, Patrick Rabaghn

Judge COAR
Magistrate Judge Denlow

## AMENDED COMPLAINT

Additional information being added to the case.

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

---

Carla H. Hill,
Complainant,

                    Agency Case Nos. 4J-604-0016-04
                                    4J-604-0101-02

                    EEOC Case No.  210-2004-00152X
                    OFO Docket No.  0120072519

v.

                    Formals Filed: March 27, 2004
                                 June 19, 2002

John E. Potter,
Postmaster General,
c/o Great Lakes Area Operations
Respondent.

---

### FINAL AGENCY DECISION

This is the final agency decision of the U.S. Postal Service regarding your complaints of discrimination identified above.  In those complaints, you alleged discrimination based on: 1) race (Black), color (Black), sex (female), age (DOB 09/30/1959), and reprisal (prior EEO activity) when, on May 14, 2002 you were interrogated and harassed about being late; 2) race (Black), sex (female), disability (back), and reprisal (prior EEO activity) when, from September 30, 2003 to December 22, 2003, you were: a) not given a light duty assignment; b) told not to talk, no skipping lunch, sit without work, and denied leave; c) ordered to take a fitness for duty exam; d) moved to light duty and not given full days work (8 hours); and when, 3) on May 18, 2004, you were told to go home because no light duty work was available and your request to remain was denied.  (Hearing File, Decision of U.S. Equal Employment Opportunity Commission, Office of Federal Operations, dated September 19, 2007).[1]  [Hereinafter, references will be noted as follows:  Hearing File (Hrg. File); Investigative File in Case No. 4J-604-0101-02 (IF-2002); Investigative File in Case No. 4J-604-0016-04 (IF-2004); Affidavit (Aff.); Exhibit (Exh.); Page/Pages (p.); Number/Numbers (n.)]

---

[1]      The Commission's September 19, 2007 Decision also noted that you asserted, in your appeal, that you had been denied a transfer to the position of window clerk.  The Commission had previously directed you to contact an EEO Counselor if you wished to pursue this claim. (Hearing File, OFO Decision dated September 19, 2007, footnote 2).  The issue of your transfer to a window clerk position is therefore not part of this claim.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 2

## CASE CHRONOLOGY

On June 29, 2002, you filed a formal complaint of discrimination, identified as 4J-604-0101-02. (IF-2002, p.263). An Equal Employment Opportunity Investigator processed that complaint, and a copy of the Report of Investigation and Investigative File were transmitted to you on December 08, 2003. On January 02, 2004, the Postal Service received your Request for a Hearing Form in Case No. 4J-604-0101-02.

On March 27, 2004, you filed a formal complaint of discrimination, identified as 4J-604-0016-04. (IF-2004, EEO Complaint of Discrimination in the Postal Service). An Equal Employment Opportunity Investigator processed that complaint, which was subsequently withdrawn as part of a settlement involving Case No. 4J-604-0101-02. (Hrg. File, Settlement Agreement dated August 19, 2004, paragraph 1).

On August 19, 2004, you entered into a Settlement Agreement (SA) in which you agreed, among other things, to withdraw your formal complaint and request for hearing in Case No. 4J-604-0101-02, and your formal complaint in Case No. 4J-604-0016-04. (Hearing File, Settlement Agreement dated August 19, 2004, paragraph 1). EEOC Administrative Judge Winston J. Jackson, Jr. issued an Order Confirming Settlement Agreement, dated August 27, 2004, and the parties took steps to implement the terms of that SA.[2]

By letter dated August 15, 2005, you claimed that the SA had been breached; consequently, on October 05, 2005, a Notice of Final Agency Decision was issued in which the Postal Service concluded that the SA had not been breached. You filed a Notice of Appeal/Petition to the Equal Employment Opportunity Commission, Office of Federal Operations (OFO), on or about October 24, 2005, and OFO informed the Postal Service of your appeal of the October 05, 2005, Notice of Final Agency Decision by letter dated November 08, 2005.

On May 17, 2006, OFO issued its Decision on your appeal, concluding that the SA was invalid because it violated the Older Workers Benefit Protection Act, which amended the Age Discrimination in Employment Act of 1967. Consequently, OFO ordered the SA vacated and remanded your complaint to the Postal Service to resume processing from the point where processing had

---

[2]      For example, the Postal Service issued Check No. 0254967337, and your attorney forwarded a medical release, as part of the parties' obligations pursuant to the Settlement Agreement. (Hrg. File, Letter from Heather Sloan to Gregory Mitchell, dated September 08, 2004; Letter from Gregory Mitchell to Heather Sloan, dated September 14, 2004).

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 3

ceased. Both parties requested reconsideration of OFO's May 17, 2006 Decision, however, by Denial dated February 02, 2007, OFO denied those requests and ordered the Postal Service to resume processing your complaint.

By letter dated February 12, 2007, the Postal Service asked that the EEOC's Chicago District Office to resume processing of your complaint, which had previously reached the hearing stage.[3]  Administrative Judge Winston J. Jackson, Jr. issued an Acknowledgment and Scheduling Order, dated February 20, 2007, however, the Postal Service filed a Motion to Dismiss, in which it was asserted that you had abandoned the processing of these claims when you filed a civil action in U.S. District Court asserting the claim that the SA had been breached. (Hrg. File, Respondent's Motion to Dismiss, dated February 28, 2007).

On March 12 or 17, 2007, you requested a final agency decision without a hearing. (Hrg. File, Appeal to Respondent's Motion to Dismiss). Consequently, on March 28, 2007, AJ Jackson dismissed your hearing request and issued an Order Granting Complainant's Request for Final Agency Decision. The Postal Service then issued a Final Agency Decision, dismissing your complaints numbered 4J-604-0101-02 and 4J-604-0016-04, based on your having filed a civil action in U.S. District Court.

On or about May 02, 2007, you appealed the Final Agency Decision to OFO and, by Decision dated September 19, 2007, OFO ordered the Postal Service to process your remanded claims, which are identified on page two of the Decision. Because you had previously withdrawn your request for a hearing and instead asked for a final agency decision, OFO ordered the Postal Service to issue a final agency decision on the remanded claims.

Thus, this decision is being issued based on your request for a final agency decision, and in compliance with OFO's September 19, 2007 Decision.

## APPLICABLE LAW

### Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing  claims of discrimination in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and subsequently refined that analysis in Texas Department of Community Affairs v. Burdine, 450 U.S. 248

---

[3]     EEOC Hearing No. 210-2004-00152X consisted of Agency Nos. 4J-604-0101 and 4J-604-0016-04.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 4

(1981). The <u>McDonnell Douglas</u> and <u>Burdine</u> approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory. The Equal Employment Opportunity Commission has adopted this approach in its decision making. <u>Downing v. U.S. Postal Service</u>, EEOC Appeal No. 01822326 (September 19, 1983); <u>Jennings v. U.S. Postal Service</u>, EEOC Appeal No. 01932793 (April 13, 1994); <u>Saenz v. Department of the Navy</u>, EEOC Request No. 05950927 (January 9, 1998). A complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. <u>Furnco Construction Co. v. Waters</u>, 438 U.S. 567, 576 (1978).

Although a complainant may establish a *prima facie* case by presenting direct evidence of discrimination, the more frequent method of establishing a *prima facie* case is through circumstantial evidence by showing that he or she (1) belongs to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. <u>Mayberry v. Vought Aircraft Company</u>, 55 F.3d 1086, at 1090 (5th Cir. 1995); <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, at 582-83 (6th Cir. 1992). The failure to establish a specific element of a *prima facie* case may be overcome by presenting evidence of agency actions from which an inference of discrimination could be drawn if they remained unexplained. <u>Day v. Postmaster General</u>, EEOC Appeal No. 01996097 (September 18, 2000).

Once a *prima facie* case is established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. <u>Furnco,</u> 438 U.S. at 578. <u>See also,</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. <u>Burdine</u>, 450 U.S. at 254; <u>Keval v. Commodity Futures Trading Commission</u>, EEOC Appeal No. 01832127 (November 2, 1984); <u>Hollis v. Department of Veterans Affairs</u>, EEOC Appeal No. 01934600 (May 3, 1994). If the agency offers no adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees, the agency does not carry its burden of production and the complainant prevails on the basis of the inference of discrimination created by the *prima facie* case. <u>Frady v. Postmaster General</u>, EEOC Appeal No. 01A05317 (January 10, 2003); <u>Houston v. Department of Veterans Affairs</u>, EEOC Appeal No. 01976054 (August 27, 1999); <u>Parker v. Postmaster General</u>, EEOC Request No. 05900110 (April 30, 1990).

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 5

If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." Hicks, 509 U.S. at 507; United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983).  See also, Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990); Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990).  The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, 1185 (5th Cir. 1997).  See also, Papas v. Postmaster General, EEOC Appeal No. 01923753 (March 17, 1994); Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994).  Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997); Lyles v. U.S. Postal Service, EEOC Appeal No. 01A11110 (May 22, 2002); Nathan v. U.S. Postal Service, EEOC Appeal No. 01995788 (August 29, 2001).  Pretext involves more than a mistake.  It means that the reason offered by management is factually baseless, is not the actual motivation for the action, or is insufficient to motivate the action.  Tincher v. Wal-Mart Stores, Inc., 118 F. 3d 1125, 1130 (7th Cir. 1997); Morgan v. Hilti, Inc., 108 F. 3d 1319, 1323 (10th Cir. 1997).  The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 254; Hicks, 509 U.S. at 511.

At all times, the ultimate burden of persuasion remains with the complainant. Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, 509 U.S. 502.  In Hicks, the Court held that in order to impose liability upon an employer for discriminatory employment practices, an ultimate finding of unlawful discrimination is required regardless of whether or not the employer's explanation for its action was believable.  See also, Brewer v. Postmaster General, EEOC Appeal No. 01941786 (June 21, 1994); Montoya v. Department of Housing and Urban Development, EEOC Appeal No. 01940999 (August 4, 1994).

## Similarly Situated Employees

One of the key elements of a *prima facie* case of disparate treatment based on an adverse employment action is proof that similarly situated comparison employees not in the complainant's protected class were treated more favorably.  This is so, in part, because agencies are not monolithic entities. Turner v. Department of the Navy, EEOC Request No. 05900445 (September 25,

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 6

1990). In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail. Aguilar v. U.S. Postal Service, EEOC Appeal No. 01944167 (August 8, 1995). In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of the other employees who he or she alleges were treated more favorably. Smith v. Monsanto Chemical Company, 770 F. 2d 719, 723 (8th Cir. 1985); Murray v. Thistledown Racing Club, Inc., 770 F. 2d 63, 68 (6th Cir. 1985); Nix v. WLCY Radio/Rahall Communications, 738 F. 2d 1181, 1185 (11th Cir. 1984); Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D. N.Y. 1986), aff'd. 814 F. 2d 653 (2nd Cir. 1987). The Equal Employment Opportunity Commission has on numerous occasions ruled in similar fashion. See, for example, Tolar v. U.S. Postal Service, EEOC Appeal No. 01965083 (December 16, 1998), citing O'Neal v. U.S. Postal Service, EEOC Request No. 05910490 (July 23, 1991); Knapp-Huffman v. Attorney General (Bureau of Prisons), EEOC Appeal No. 01991026 (January 16, 2002). If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated. O'Neal, EEOC Request No. 05910490 (July 23, 1991); Allen v. Department of the Navy, EEOC Appeal No. 05900539 (June 15, 1990); Willis v. Department of the Treasury, EEOC Appeal No. 01A51459 (March 16, 2003); Stewart v. Department of Defense, EEOC Appeal No. 01A02890 (June 27, 2001).

## Age Discrimination

In order to establish a *prima facie* case of age discrimination, a complainant must show proof of the Title VII criteria set forth by the Supreme Court in McDonnell Douglas, 411 U.S. 792; O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308 (1996); Loeb v. Textron, Inc., 600 F. 2d 1003 (1st Cir. 1979); Mitchell v. Department of the Interior, EEOC Appeal No. 01990787 (January 10, 2002). The agency's burden to articulate a legitimate, nondiscriminatory reason for its action and the complainant's burden ultimately to prove pretext remain the same as in a Title VII disparate treatment case. The Court in O'Connor also held that it is not just a question of whether a comparison employee is outside the protected age category but also whether the comparator is substantially younger than the complainant. O'Connor, 517 U.S. 308 (1996). See also, Fullman v. Postmaster General, EEOC Appeal No. 01A31036 (March 18, 2004). The Supreme Court has also held that a complainant alleging age discrimination must prove not only that age was considered, but also that age made a difference in the outcome of the employer's decision-making process.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 7

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000); Hazen Paper Company v. Biggins, 507 U.S. 604, 610 (1993). In other words, in age cases the complainant must prove by a preponderance of the evidence that age was considered and that it was the *determining factor*. If the complainant's burden fails on either point, no relief is provided. Cleverly v. Western Electric Company, 594 F.2d 638, 641 (5th Cir. 1979); Kentroti v. Frontier Airlines, 585 F.2d 967, 974 (10th Cir. 1978); Laugeson v. Anaconda Company, 520 F.2d 307, 317 (6th Cir. 1976). See also, Sullivan v. Chairman, Tennessee Valley Authority, EEOC Appeal No. 01940217 (November 9, 1994); Lasley v. Department of Veterans' Affairs, EEOC Appeal No. 01870615 (October 8, 1987).

## Person with a Disability

In order to assert a claim of disability discrimination, a complainant must satisfy the threshold requirement that he or she is a "person with a disability" as that term is defined in the Rehabilitation Act and Equal Employment Opportunity Commission regulations. Title 29 of the Code of Federal Regulations, Section 1630.2(g) defines a person with a disability as an individual who (i) has a physical or mental impairment which substantially limits one or more of that person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. See also, Melahn v. Department of the Navy, EEOC Appeal No. 01832380 (October 21, 1985). Whether an individual has a disability is not based on the name or diagnosis of the impairment involved but rather the effect which that impairment has on the individual's life. Sutton *et al.* v. United Airlines, Inc., 527 U.S. 471, 483 (1998). Also, the mere fact that an agency relied on a complainant's physical condition in taking a personnel action does not indicate that the agency perceived that the complainant had a substantially limiting condition. Kelly v. U.S. Postal Service, EEOC Appeal No. 01830028 (November 15, 1983). Similarly, the mere fact that an agency processed an employee's claim for benefits under the Federal Employees Compensation Act and/or granted the employee a modified work assignment in connection with that claim would not prove that the agency regarded the employee as disabled. Brown v. U.S. Postal Service, EEOC Appeal No. 01990686 (February 21, 2002).

According to EEOC regulations, major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. See, 29 C.F.R. 1630.2(i). The Interpretive Appendix to the regulations also identifies sitting, standing, lifting, and reaching as other major life activities. The term "impairment" is defined broadly at 29 C.F.R. 1630.2(h) and the Commission's guidance on having a record of an impairment or being perceived as disabled appears at 29 C.F.R. 1630.2 (k) and (l). The regulations define "substantially limited" as meaning that

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 8

the individual cannot perform the major life activity at all or is significantly limited in the ability to perform the activity compared to the average person in the general population.   29 C.F.R. 1630.2(j); Toyota Motor Manufacturing of Kentucky, Inc. v. Williams, 534 U.S. 184 (2002).   See also, Harrison v. Department of Justice, EEOC Appeal No. 01A03948 (July 30, 2003).  Courts also look to mitigating factors such as assistive devices or medication in determining whether an individual is substantially limited.  Sutton, 527 U.S. 471.  Temporary or intermittent conditions are not covered.  Heino v. Postmaster General, EEOC Appeal No. 01994965 (January 28, 2002); Anderson v. National Gallery of Art, EEOC Appeal No. 03910108 (September 17, 1991); Wolfe v. Postmaster General, EEOC Appeal No. 01993796 (July 8, 2002).  If the major life activity of "working" is involved, the individual must be unable to perform an entire class of jobs or a broad range of jobs within the class in order to be substantially limited. 29 C.F.R. 1630.2(j)(3).  See also, Webber v. Department of the Air Force, EEOC Appeal No. 01989587 (March 2, 2001).

A generalized assertion, without specific evidence to support it, that an individual is substantially limited is not sufficient to satisfy a complainant's burden of proof.  Lohr v. U.S. Postal Service, EEOC Request No. 05930799 (May 19, 1994); Zeigler v. Postmaster General, EEOC Appeal No. 01930854 (May 12, 1994); Jenkins v. Postmaster General, EEOC Appeal No. 01954572 (March 24, 1997).  It is also not enough that the agency is in possession of a diagnosis, that an individual's supervisor knows that they have a particular condition, that the complainant has an approved claim with the Office of Workers Compensation Programs, or that the complainant has a percentage disability awarded by the Department of Veterans' Affairs.  Black v. U.S. Postal Service, EEOC Request No. 05930748 (May 12, 1994); Pascale v. Department of the Navy, EEOC Petition No. 03850092 (March 5, 1986); Schnabele v. U.S. Postal Service, EEOC Appeal No. 01982634 (July 13, 2001); Bono v. Postmaster General, EEOC Appeal No. 01951113 (August 11, 1997).

## Disability – Disparate Treatment

Courts have adopted and applied the Title VII burdens of proof to disability discrimination claims.  See, for example, Norcross v. Sneed, 755 F.2d 113 (8th Cir. 1985); Prewitt v. United States Postal Service, 662 F.2d 292 (5th Cir. 1981). The Commission has also analyzed cases under this theory.  Greathouse v. Department of the Army, EEOC Appeal No. 01984880 (May 2, 2001); Oberg v. Secretary of the Navy, EEOC Request No. 05890451 (July 20, 1989).  In order to establish a prima facie case of disability discrimination, a complainant must prove, by a preponderance of the evidence, that he was treated differently than individuals not within his protected group, or that the agency failed to make a needed reasonable accommodation, resulting in adverse treatment of the

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 9

complainant. See, Session v. Helms, 751 F.2d 991, 992-3 (9th Cir.), cert. denied, 474 U.S. 846 (1985). A complainant also must demonstrate a causal relationship between the disabling condition and the agency's reasons for the adverse employment action. Rideout v. Department of the Army, EEOC Appeal No. 01933866 (November 22, 1995); Mackey v. U.S. Postal Service, EEOC Appeal No. 01931771 (April 28, 1994); Milder v. Department of Veterans' Affairs, EEOC Appeal No. 01971724 (January 15, 1999).

## Disability – Accommodation

Assuming that a complainant has established that he or she is a person with a disability, the next element of a *prima facie* case based on a failure to accommodate is to establish that he or she is "otherwise qualified."    The regulations define a "qualified individual with a disability" as a person who satisfies the requisite skill, experience, educational, and other job-related requirements of the position the individual holds or desires and who, with or without reasonable accommodation, can perform the essential functions of that position without endangering the health and safety of the individual or others. 29 C.F.R. 1630.2(m). The essential functions of a position are the fundamental job duties of the position the complainant holds or desires considering whether the position exists to perform the function, whether there are a limited number of individuals available to perform the function, or whether the function is highly specialized and the incumbent was hired for his or her expertise. 29 C.F.R. 1630.2(n).    The complainant has the burden of proving that he or she is a "qualified individual with a disability." Jasany v. United States Postal Service, 755 F. 2d 1244 (6th Cir. 1985). The complainant must also show that the agency was aware of the allegedly disabling condition and that an accommodation can be made. Mikovich v. Postmaster General, EEOC Appeal No. 01A11150 (June 20, 2002); Lincovich v. U.S. Postal Service, EEOC Appeal No. 01810610 (August 9, 1982).

If it is determined that the complainant is unable to perform the essential functions of his or her position, the next inquiry is concerning whether there is any reasonable accommodation by the employer which would enable him or her to perform those functions. White v. York International Corporation, 45 F. 3d 357, 361-362 (10th Cir. 1995). An employer is not required to provide an accommodation which does not assist the complainant in performing the essential functions of his or her position. Conley v. Postmaster General, EEOC Appeal No. 01984624 (July 6, 2001).    The employer must be able to accommodate the individual without undue hardship. Brown v. Secretary of the Interior, EEOC Petition No. 03A00004 (May 22, 2002); Hoang v. Postmaster General, EEOC Appeal No. 01923725 (March 30, 1993). The employer is not required to accommodate an individual by eliminating the essential functions of

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 10

his or her job or by creating a job not already existing within the organization, including a light duty position. Turco v. Hoechst Celanese Corporation, 101 F. 3d 1090, 1093-1094 (5th Cir. 1996); Shiring v. Runyon, Postmaster General, 90 F. 3d 827, 831-832 (3rd Cir. 1996); Watson v. Lithonia Lighting and National Service Industries, Inc., 304 F. 3d 749 (7th Cir. 2002), cert. denied 123 S. Ct. 1286 (2003) The Rehabilitation Act does not require an employer to lower or substantially modify standards to accommodate an individual or to take an action inconsistent with the contractual rights of others under a collective bargaining agreement. Jasany, 755 F. 2d at 1250-1251; Foreman v. Babcock & Wilcox Company, 117 F. 3d 800, 810 (5th Cir. 1997); Williams v. Widnall, 79 F. 3d 1003 (10th Cir. 1996); Hufford-Smith v. Attorney General, EEOC Appeal No. 01995040 (February 13, 2002). In addition, a disabled worker is not entitled to the reasonable accommodation which he or she prefers and must show a connection between the disabling condition and the requested accommodation. Gile v. United Airlines, Inc., 95 F. 3d 492, 498 (7th Cir. 1996); Wiggins v. U.S. Postal Service, EEOC Appeal No. 01953715 (April 22, 1997); Metzenbaum v. Office of Personnel Management, EEOC Appeal No. 01986974 (April 4, 2002).

An employer may accommodate an individual through reassignment. However, the employer does not have to accommodate him or her by promoting him to a higher level position or bumping another employee out of a job to create a vacancy. Shiring, 90 F. 3d at 832. The court held that the employee would have to establish that "...there were vacant, funded positions whose essential duties [the employee] was capable of performing, with or without reasonable accommodation, and that those positions were at an equivalent level or position [as the position the employee previously held]." Therefore, for the accommodation of reassignment to be reasonable, a position must exist within the organization and be vacant, the employee must be "otherwise qualified" to meet the criteria for this position, and the reassignment must not offend the contract rights of others under the applicable collective bargaining agreement. Foreman, 117 F. 3d at 810.

## Retaliation

To establish a *prima facie* case based on reprisal, a complainant must show that (1) he or she engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) he or she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass), aff'd 545 F.2d 222 (1st Cir. 1976); Manoharan v. Columbia University College of Physicians and Surgeons, 842 F. 2d 590, 593 (2d Cir. 1988); Coffman v. Department of Veterans' Affairs, EEOC

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 11

Request No. 05960437 (November 20, 1997); Whitmire v. Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000). A complainant may establish prior EEO activity by participating at any stage of the EEO process or opposing unlawful discriminatory conduct. See, generally, Lewis v. Department of the Navy, EEOC Appeal No. 01810158 (May 22, 1981) (counseling stage); Ballard v. Postmaster General, EEOC Appeal No. 01923276 (August 17, 1992) (witness); Burrough v. U.S. Postal Service, EEOC Appeal No. 01842417 (June 24, 1986) (representative). A complainant may also establish a *prima facie* case by presenting evidence which, unexplained, would reasonably give rise to an inference of reprisal. Shapiro v. Social Security Administration, EEOC Request No. 05960403 (December 6, 1996). Obviously, the complainant must offer evidence that the agency officials who took the action were aware of his or her prior participation or opposition activity (Demeier v. Department of the Air Force, EEOC Appeal No. 01A11166 (May 23, 2002)) but establishing that alone will not enable a complainant to establish the causal connection element of a *prima facie* case. Garcia-Gannon v. Department of the Air Force, EEOC Appeal No. 01821195 (June 30, 1983). Adverse actions need not be ultimate employment actions, just adverse treatment based on a retaliatory motive. Burlington Northern Santa Fe Railway Company v. White, 126 S. Ct. 2405 (2006); Lindsey v. U.S. Postal Service, EEOC Request No. 05980410 (November 4, 1999).

The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. Clark County School District v. Breeden, 532 U.S. 286 (2001). The Court in Breeden noted that where a complainant is relying on temporal proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be "very close" and cited with approval Circuit Court of Appeals decisions holding that time gaps of three to four months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation. The Commission has followed suit and rendered decisions establishing much shorter time frames to establish the requisite temporal proximity. See, for example, Heads v. U.S. Postal Service, EEOC Appeal No. 01A51547 (June 2, 2005); Archibald v. Department of Housing and Urban Development, EEOC Appeal No. 01A54280 (September 22, 2005); Lynch v. U.S. Postal Service, EEOC Appeal No. 01A24705 (August 14, 2003). To support a finding of unlawful retaliation, there must be proof that the agency official(s) took the action at issue because of complainant's prior protected activity and sought to deter complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998), p. 8-16.

Any harassment of an employee that would not occur but for the employee's previous EEO activity may violate Title VII if sufficiently patterned or pervasive. McKinney v. Dole, 765 F.2d 1129, 1138 (D.C. Cir. 1985). See also,

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 12

Patrick v. Postmaster General. EEOC Appeal No. 01A05642 (November 28, 2000). For harassment to be considered retaliatory conduct in violation of Title VII, it must be sufficiently pervasive or severe as to create a hostile work environment which significantly and adversely affects the emotional or psychological well-being of the employee, and must somehow be connected to that employee's previous EEO activity. See, Hicks v. Gates Rubber Company, 833 F.2d 1406, 1412-1413 (10th Cir. 1987); Gilbert V. City of Little Rock, 722 F.2d 1390, 1394 (8th Cir. 1983); Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982); Bundy v. Jackson, 641 F.2d 934, 943-944 (D.C. Cir. 1981); Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir. 1971).

## Harassment

Harassment of an employee that would not occur but for the employee's race, color, sex, national origin, age, disability, or religion is unlawful if it is sufficiently severe or pervasive. Wibstad v. U. S. Postal Service, EEOC Appeal No. 01972699 (August 14, 1998), citing, McKinney v. Dole, 765 F. 2d 1129, 1138-1139 (D.C. Cir. 1985); Long v. Attorney General, EEOC Appeal No. 01984213 (July 10, 2001). See also, Hubbert v. Department of the Army, EEOC Request No. 05910133 (March 19, 1991); Ortega v. Postmaster General, EEOC Appeal No. 01995243 (May 3, 2001); Humphrey v. U.S. Postal Service, EEOC Appeal No. 01965238 (October 16, 1998). Harassment due to an individual's prior EEO activity is also actionable. Roberts v. Department of Transportation, EEOC Appeal No. 01970729 (September 15, 2000). The Supreme Court has held that an employer who creates or tolerates a work environment which is permeated with "discriminatory intimidation, ridicule, and insult" that is sufficiently severe or pervasive to alter the terms and conditions of an individual's employment and which creates an abusive work environment is in violation of Title VII. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), citing, Meritor Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986). The conduct in question is evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred, including the severity and frequency of the conduct and its effect on the employee's work performance. Harris, 510 U.S. 17. In order to support a finding of a hostile work environment, more than a few isolated incidents of enmity based on race, gender, national origin, religion, etc. must have occurred. Johnson v. Bunny Bread Co., 646 F. 2d 1250, 1257 (8th Cir. 1981); Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F. 2d 87, 88 (8th Cir. 1977. There must have been a steady barrage of opprobrious comments and not a casual comment or accidental or sporadic conversation in order to trigger an entitlement to relief. Snell v. Suffolk County, 782 F. 2d 1094 (2d Cir. 1986).

The Equal Employment Opportunity Commission has repeatedly held that remarks unaccompanied by a concrete agency action are not a direct or personal

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 13

deprivation sufficient to render an individual aggrieved. <u>Johnson v. Department of Justice</u>, EEOC Appeal No. 01986199 (February 18, 2000); <u>Backo v. U.S. Postal Service</u>, EEOC Request No. 05960227 (June 10, 1986); <u>Henry v. U.S. Postal Service</u>, EEOC Request No. 05940695 (February 9, 1995). The Commission has also agreed with the courts and held that in order to establish a case of harassment that constitutes a hostile work environment, the harassment must be ongoing and continuous and that a few isolated incidents will not be sufficient to constitute discriminatory harassment. <u>McGivern v. U.S. Postal Service</u>, EEOC Request No. 05930481 (March 17, 1994); <u>Vargas v. Department of Justice</u>, EEOC Request No. 05931047 (October 7, 1993). The conduct involved must be viewed in the context of the totality of the circumstances including, among other things, the nature and frequency of the offensive encounters and the time span over which the encounters occurred. <u>Rabidue v. Osceola Refining Company</u>, 805 F. 2d 611, 620 (6th Cir. 1988); <u>Gilbert v. City of Little Rock</u>, 722 F. 2d 1390, 1394 (8th Cir. 1993). The decisions make it clear that the anti-discrimination laws are not a "general civility code" and that the conduct complained of must be so objectively offensive as to alter the terms and conditions of one's employment. Routine work assignments, instructions, and admonishments do not rise to the level of discriminatory harassment. <u>DiFruscio v. Social Security Administration</u>, EEOC Appeal No. 01982006 (September 13, 2000).

## PROCEDURAL AND FACTUAL BACKGROUND

At all times relevant to the issues in this complaint, you were employed as a full-time Carrier (City) at the Hazel Crest Post Office in Hazel Crest, Illinois. (IF-2002, p.44; IF-2004, Formal Complaint). You have alleged that Supervisor, Customer Services James Fuscaldo (Caucasian, white, male, under 40 years [on 7/11/03]) and Officer in Charge Zerex Veal (African American, color not identified, male, over 40) intentionally discriminated against you because of your race (Black), color (Black), sex (female), age (DOB 09/30/1959), and reprisal (prior EEO activity) when, on May 14, 2002, you were interrogated and harassed about being late. (IF-2002, p.258, p.14). You have further alleged that Mr. Fuscaldo and Postmaster Patrick Kavanaugh (race, color, sex, and age not identified) intentionally discriminated against you because of your race (Black), sex (female), disability (back), and reprisal (prior EEO activity) when, from September 20, 2003 to December 22, 2003, you were: a) not given a light duty assignment; b) told not to talk, no skipping lunch, sit without work, and denied leave; c) ordered to take a fitness for duty exam; d) moved to light duty and not given full days work (8 hours); and when, 3) on May 18, 2004, you were told to go home because no light duty work was available and your request to remain was denied. (IF-2004, Aff. of Complainant.; Partial Acceptance/Dismissal of

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 14

Complaint, dated April 20, 2004; Acknowledgment of Amendment of Complaint, dated June 18, 2004).

As noted previously, this Final Agency Decision involves two cases which were consolidated for hearing purposes. In addition to the six issues which OFO identified for inclusion in this Final Agency Decision, several other matters were raised in your complaints.[4]  Those issues were not part of claims which were accepted for investigation or were addressed in other complaints. Therefore, only the six issues which were set out in OFO's September 19, 2007 Decision will be addressed herein.

## COMPLAINANT'S *PRIMA FACIE* CASE

In order to establish a *prima facie* case of disparate treatment discrimination based on race, color, sex, or age, you must show that you: (1) belong to a protected class; (2) were subjected to an adverse employment action; and (3) were treated differently in this regard than similarly situated individuals who were not members of your protected group.

To establish a *prima facie* case of harassment, you must show that: 1) you belonged to a statutorily protected class; 2) you were subjected to harassment in the form of unwelcome verbal or physical conduct involving, and based on, the protected class; and 3) the harassment affected a term or condition of your employment and/or had the purpose or effect of unreasonably interfering with your work environment and/or creating an intimidating, hostile, or offensive work environment.

As outlined above, you alleged different bases for some of your claims of discrimination. Specifically, as to your 2002 complaint, you did not identify disability as a basis, and you did not identify color or age as bases for your 2003 or 2004 claims. (IF-2002, p.258; IF-2004, Partial Acceptance/Dismissal of Complaint, dated April 20, 2004; Acknowledgment of Amendment of Complaint, dated June 18, 2004). Each claim and basis will be discussed accordingly below.

Race, Color, Sex, and Age Discrimination - 4J-604-0101-02. Having identified your race as African-American, your sex as female, and your date of

---

[4]      For example, in 4J-604-0101-02, you included, as an attachment to your affidavit, information going back to September 2001 about improper evaluation of your route, unfair assignment of additional pivots, and disapproval of requests for auxiliary assistance, among other things. (IF-2002, p.170-173).

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 15

birth as September 30, 1959, you have established membership in protected groups, thereby fulfilling the first element of your *prima facie* case.[5]

Next you must show that you were subjected to an adverse employment action and that similarly situated individuals outside your protected class were treated more favorably or that you were subjected to conduct which affected a term or condition of your employment, or created an intimidating, hostile, or offensive work environment.    To establish an adverse employment action, you must demonstrate that the employer's conduct was "materially adverse" to your job status. Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1212 (10th Cir. 2003). A mere inconvenience or alteration of job responsibilities will not be considered to be an adverse employment action. Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998). Rather, to qualify as an adverse employment action, the action must result in a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Aquilino v. Univ. of Kan., 268 F.3d 930, 934 (10th Cir. 2001) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). *De minimus* employment actions are not materially adverse employment actions. Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000).

You alleged that Mr. Fuscaldo "brought [you] into the office on May 14, 2002 for not filling out a 3971 for being late." (IF-2002, p.263).   You further explained that Mr. Fuscaldo told you "the computer says you should have been back" and that when you are late, he "hollers and screams at [you] like [you're] some kind of child." (IF-2002, p.15).   According to your statement, you were once given a 3996 which indicated your route time was 5.3 hours, then later given another 3996 with your route timed at 6.0 hours. (IF-2002, p.15). You also said that Mr. Fuscaldo hung the phone up on you when you called in to say you were going to be late returning from your route and that he "always turns the lights out on [you] only" when you ended up being the last carrier back from the street. (IF-2002, p.15).

You have not demonstrated that Mr. Fuscaldo's actions resulted in a significant change in your employment status.   When asked how you were aggrieved by this conduct, you said that "Jim and Zerex continually badger [you] about being late" and that they "keep saying [you are] not doing [your] job and that [your] job is in jeopardy." (IF-2002, p.17, n.T).   However, there is no evidence that any action had been taken along those lines. Consequently, you

---

[5]    Although asked, you did not identify your color in your affidavit. (IF-2002, p.250, n.3A; p.14, n.3A).

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 16

have failed to establish the second element of your claim of disparate treatment
on this issue.

As to the third element, you said that Robert McGee, who you identified as
an African-American male, performed his job duties ineffectively, but that the
supervisor did not address the problem. (IF-2002, p.15; p.275). You also said
that John Gosciej, who you identified as a Caucasian male, "pivots 30 minutes or
less everyday." (IF-2002, p.275). Both Mr. McGee and Mr. Gosciej are outside
your sex class and Mr. Gosciej is outside your protected race class. Mr. McGee
was approximately 33 years of age at the time in question; he is therefore outside
your protected age class for purposes of this analysis. (IF-2002, Exh. 12) Mr.
Gosciej's is nine years older than you are, therefore, he is not outside your
protected age class. (IF-2002, Exh. 12). Importantly, however, you did not
articulate any circumstances that were similar to yours in which either Mr. McGee
or Mr. Gosciej was treated more favorably. You did not specify any dates on
which either individual returned late to the office but was not asked to account for
their time, or were otherwise treated more favorably than you were treated under
similar circumstances. Consequently, you failed to establish the third element of
your *prima facie* case of disparate treatment as to this issue.

As to whether you were subjected to harassment, although you said you
are "continually badger[ed]," you cited only the one specific incident of being
brought into the office and you provided no details to support your general
statements that you were yelled at when you returned late. As set out in more
detail below, Mr. Fuscaldo also explained that he turned out the lights on one
occasion when you returned late because he had to leave immediately. Further,
you identified Suzanne Hankins and Robert McGee as individuals who witnessed
the incidents about which you complained, or who had other relevant information.
(IF-2002, p.189, 192). However, both Ms. Hankins and Mr. McGee said they did
not have any information pertinent to your allegations. (IF-2002, p.40, 42). And
finally, the conduct about which you complained consisted primarily of work-
related instructions; there is no evidence that your work environment was
permeated with discriminatory ridicule or insult sufficiently pervasive so as to
alter the terms or conditions of your employment. Therefore, you have failed to
establish a *prima facie* case of harassment based on this issue.

Race and Sex Discrimination - 4J-604-0016-04. As above, you have
established the first element of your *prima facie* case of race and sex
discrimination. Next, as to each claim, you must show that you were treated
disparately or subjected to harassment.

You claimed that on September 30, 2003, you reported to work "with a
light duty medical authorization form" and that Mr. Fuscaldo refused to provide

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 17

you with a light duty assignment. (IF-2004, Aff. of Complainant dated July 20, 2004, p.1; Information for Pre-Complaint Counseling). You said that you were "not sick and [you were] ready to work" but that you went home and "later learned that [Mr. Fuscaldo] had erased [your] punch in time, and had entered '8 hours sick.'" (IF-2004, Aff. of Complainant dated 7/20/04, p.1). As set out in detail below, Mr. Fuscaldo said you did not provide him with documentation on September 30, 2003, which would have permitted you to perform light duty work. (IF-2004, Aff. of J. Fuscaldo, p.1-2). Both Mr. Kavanaugh and Mr. Fuscaldo said the prior documentation you provided stated you were incapacitated, and that you had requested leave for the period of your incapacitation, which had been granted. (IF-2004, Aff. of J. Fuscaldo, p.1-2; Aff. of P. Kavanaugh, p.1-2; PS Form 3971, dated September 30; Time and Attendance Record dated 9/30).[6] Management's compliance with your medical limitations on the date at issue did not subject you to an adverse employment action, therefore, you failed to establish the second element of your *prima facie* case of discrimination based on disparate treatment.

You identified Marge Nemeth and John Fajman as being similarly situated but treated more favorably. (IF-2004, Aff. of Complainant dated 7/20/04, p.2). You stated that both were White, and therefore outside of your protected race group; John Fajman is presumed to be outside your protected sex class. However, you did not show that either of these individuals was subjected to restrictions contained in medical documentation which stated they were incapacitated, then reported for work and were given light duty assignments. Consequently, you have not established the third element of your *prima facie* case of disparate treatment discrimination as to this claim.

As to your next claim, you said that you "believe that Jim [Fuscaldo] and Pat [Kavanaugh] conspired to intentionally create[ ] a hostile work environment." (IF-2004, Aff. of Complainant dated 7/20/04, p.2). In support of your harassment claim, you said that, on October 20, 2003, you were engaged in "small talk" with a co-worker while you were both working and that Mr. Kavanaugh "walked over to [you] and stated in a very rude and embarrassing way" that you were not supposed to be talking. (IF-2004, Aff. of Complainant dated 7/20/04, p.2). You stated that you were embarrassed by Mr. Kavanaugh's statement. (IF-2004, Aff. of Complainant dated 7/20/04, p.2). Mr. Kavanaugh said you were not working; rather, you were talking to a window clerk, preventing both of you from performing your duties. (IF-2004, Aff. of P. Kavanaugh, p.1-2). You also said that on the same day (October 20, 2003) you asked if you could skip lunch so you could leave at 4:00 p.m. instead of 4:30 p.m., but that you were made to sit

---

[6]    This form was inadvertently dated 9/30/59, which is your date of birth, rather than 9/30/03, which was apparently the date it was submitted.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 18

in the office doing nothing until 4:30 p.m. (IF-2004, Aff. of Complainant dated 7/20/04, p.2). Documentation revealed that your request to leave early on October 20, 2003, was, in fact, granted. (IF-2004, Aff. of P. Kavanaugh, p.1-2; PS Form 3971, dated October 20, 2003). Additionally, being instructed not to engage in conversation while you were supposed to be working does not constitute harassment. Therefore, you have failed to establish a *prima facie* case of harassment based on the incidents you identified in this issue. Further, these incidents did not materially impact your employment status, nor did you identify individuals who were treated more favorably.[7]

Your next claim was that "[a]fter about a week of harassment because of [your] light duty status, Pat Kavanaugh told [you] that he 'thought [you were] faking [your] back injury'" and he stated that he was "ordering [you] to see 'their doctor and if [you] refused, [you] would be terminated.'" (IF-2004, Aff. of Complainant dated 7/20/04, p.3). Even assuming that being subjected to a fitness-for-duty examination constituted an adverse employment action, you did not identify any similarly situated individuals who were treated more favorably. You stated only that you were "not aware of any other employee being forced to be evaluated by the Postal doctor while on limited or light duty." (IF-2004, Aff. of Complainant dated 7/20/04, p.3, n.14).

As to your next issue, according to your affidavit, on December 22, 2003, Mr. Kavanaugh told you that since your claim had been denied by the Office of Workers Compensation Programs (OWCP), he did not have to give you hours, and he instructed you to leave at about 1:00 p.m. (IF-2004, Aff. of Complainant dated 7/20/04, p.3, n.15). You went on to say that you were only given 2-3 hours of work per day after that time. (IF-2004, Aff. of Complainant dated 7/20/04, p.3, n.15). Even assuming that you were subjected to an adverse employment action by this conduct, you did not identify any similarly situated individuals who were treated more favorably. You said that no other Postal Employee assigned to the Hazel Crest Post Office since 2001 has "ever been mistreated like [you] by management." (IF-2004, Aff. of Complainant dated 7/20/04, p.3, n.15). This general statement does not establish that any other employee whose claim was denied by OWCP was given more light duty work than you were given by the same management officials, under similar circumstances, during the same time period. Consequently, you have failed to establish a *prima facie* case of discrimination as to this claim.

---

[7]    You said that Suzanne Hankins, John Fajman, Donald Dantzler, Angela Myles and "just about every letter carrier at the Hazel Crest Branch was treated more favorably" than you were treated. (IF-2004, Aff. of Complainant dated 7/20/04, p.2, n.8). You did not identify the race of these individuals, nor did you explain the circumstances which would make you similarly situated, but treated differently.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 19

Lastly, you said that on May 18, 2004, after you finished pulling down your case for delivery, you asked Mr. Fuscaldo how many Express Mail packages had come into the Tri-City Post office for that day, at which time he told you that you could go home because he was sending Suzanne Hankins to retrieve that mail since she needed the hours. (IF-2004, Aff. of Complainant dated 7/16/04, p.1, n.3). In February 2004, you agreed that the light duty jobs you would perform would include casing your bid assignment and working Express Mail "as warranted and efficient," among other things. (IF-2004, Letter dated February 04, 2004, signed by Carla Hill, Rob Whitehead, and Patrick Kavanaugh). On the date at issue, you cased your route, as outlined in the February 04, 2004 letter. The other duties outlined in that letter are to be performed "as warranted and efficient" or "when available and necessary." (IF-2004, Letter dated February 04, 2004, signed by Carla Hill, Rob Whitehead, and Patrick Kavanaugh). Not being permitted to perform duties you would like to perform, when management has not deemed it "warranted" or "necessary," does not constitute an adverse employment action. Additionally, although you identified John Fajman and Marge Nemeth, you did not identify the race of either individual, nor did you explain how they were similarly situated but treated more favorably. (IF-2004, Aff. of Complainant dated 7/16/04, p.1, n.4).

As to whether, when taken together, all of the incidents about which you complained constituted harassment or comprised a hostile work environment, you did not show that your work environment was permeated with intimidation, ridicule, or insult. Title VII does not prohibit supervisors from engaging in work-related discussions with employees and a few remarks, even when those remarks are not delivered in a tone the employee believes to be favorable, does not constitute harassment. Rather, there must have been a "steady barrage of opprobrious comments" in order to trigger an entitlement to relief. See, Snell v. Suffolk County, 782 F. 2d 1094 (2d Cir. 1986). You identified six or seven incidents which occurred over the span of approximately two years. As described above, none of these incidents, when taken alone, was severe enough to constitute harassment. Even taken in combination, these six or seven situations were not so objectively offensive as to alter the terms or conditions of your employment and therefore do not rise to the level of discriminatory harassment.

Consequently, for the reasons set out above, you have failed to establish that you were subjected to disparate treatment discrimination or harassment based on race, color, sex, or age as to any of your claims.

Disability Discrimination. To bring a claim of disability discrimination, you must first establish that you are disabled within the meaning of the Rehabilitation

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 20

Act. An individual with a disability is one who has, has a record of, or is regarded as having, a physical or mental impairment that substantially limits one or more of his or her major life activities. 29 C.F.R. § 1630.2(g). As noted previously, you did not allege disability as a basis in Case No. 4J-604-0101-02. Therefore, the discussion below relates to Case No. 4J-604-0016-04 only.

You identified your impairment as "back injury." (IF-2004, Aff. of Complainant dated 7/16/04, p.1, n.2). Documentation revealed that your initial injury occurred on November 21, 2002, when you slipped and fell backwards. (IF-2004, Duty Status Report, dated 11/21/02). At that time, you were diagnosed with a "thoracic contusion," and you were released to return to work effective immediately, with only one limitation that was more restrictive than the physical requirements of your usual work activities.    That is, you were limited to lifting/carrying 10 pounds continuously and 10 pounds intermittently for 6 hours per day.[8] (IF-2004, Duty Status Report dated 11/21/02). On August 29, 2003, you claimed to have sustained a recurrence of your injury, however, on December 17, 2003, OWCP denied your claim of recurrence. (IF-2004, Form CA-2 dated 9/30/03; Case Management document dated 1/7/2004).

Since the date of your recurrence, your physical abilities have been limited as follows. On September 27, 2003, you were released to return to work, with the following restrictions: no lifting, pushing, pulling, bending, twisting until released by [illegible].  (IF-2004, Return to Work/School Verification dated 09/27/03). Although the CA-17 completed on or about October 02, 2003, is somewhat ambiguous, it appears that at that time, you were permitted to lift up to 25 pounds intermittently "with breaks," including while walking, for 4 hours per day.    (IF-2004, Form CA-17 dated October 2003).[9]    Your sitting limitation appeared to be either 0 or 1 hour per day and your standing limitation appeared to be either 0 or 4 hours per day. (IF-2004, Form CA-17 dated October 2003). However, approximately two weeks later, at an examination conducted on October 13, 2003, the limitations beyond the usual physical requirements of your duties were: lifting/carrying limited to 10 pounds continuously and 10 pounds intermittently and the notation "no bag carrier!" was made on the form. (IF-2004, Form CA-17 dated October 2003).[10]

---

[8]      Your usual work requirement was lifting/carrying 15 pounds continuously and 30 pounds intermittently. (IF-2004, Duty Status Report dated 11/21/02).
[9]      The date of examination is noted as 10/2/03; the date the physician signed the document is illegible.
[10]     The date of examination is noted as 10/13/03; the date the physician signed the document is illegible.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 21

In January 2004, you were limited to lifting/carrying less than 10 pounds;
you were permitted to sit, stand, walk, bend, and twist for 8 hours; and you were
limited to climbing and stretching/reaching above shoulder level for 5 hours. (IF-
2004, Light Duty Request dated 1/6/04). Then, on February 16, 2004, you were
limited to lifting/carrying up to 20 pounds, you were able to sit, stand, walk, bend,
twist, and climb for 8+ hours, and you could perform driving duties and operate
machinery. (IF-2004, Light Duty Request dated 2/16/04). At that time, you were
also limited to 1 hour of reaching above shoulder level and "no bag carrying," and
your anticipated date of return to full duty was March 16, 2004. (IF-2004, Light
Duty Request dated 2/16/04). In March, 2004, your lifting limitation was reduced
to 10 pounds, your climbing and stretching/reaching above shoulder level ability
was changed to 5 hours, and your doctor noted that your restrictions were not
permanent. (IF-2004, Light Duty Request dated March 20, 2004). The file also
contained a Duty Status Report dated August 16, 2004, in which your limitations
were noted as follows:  lifting/carrying limited to 10 pounds continuously and 15
pounds intermittently for 6 hours; driving for 6 hours; standing and simple
grasping for 6 hours; standing, walking, and pushing for 4 hours; climbing for 2
hours; and kneeling, bending/stooping, and twisting limited to ½ hour. (IF-2004,
Duty Status Report dated 8/16/04).

When asked whether you were substantially limited in any major life
activity, you replied "[n]ot at this time." (IF-2004, Aff. of Complainant dated
7/20/04, p.3, n.18). You further noted that, in September 2003, you were unable
to walk long distances, sit for extended periods" and you had difficulty sleeping.
(IF-2004, Aff. of Complainant dated 7/20/04, p.3, n.18). Specifically, you said
that although your back pain remained, you were "no longer substantially limited
in what [you] can do." (IF-2004, Aff. of Complainant dated 7/20/04, p.3, n.18).

Based on the information set out above, including your physical limitations
and your affidavit statements, you did not establish that you were substantially
limited in any major life activity. See, for example, Altieri v. U.S. Postal Service,
EEOC Appeal No. 01994422 (September 13, 2002) (temporary weight
restrictions fluctuating between 5 and 15 pounds, and an eventual permanent
weight restriction of 20 pounds continuous and 30 pounds intermittent does not
constitute a substantial limitation on the major life activity of lifting); Caruthers v.
Department of the Army, EEOC Appeal No. 01A00936 (March 20, 2003)
(complainant with limitation of intermittent walking for a maximum of two hours
per day, climbing stairs only intermittently for up to one hour per day, no climbing
ladders is not an individual with a disability); Blake v. United States Postal
Service, EEOC Appeal No. 07A10067 (September 10, 2002) ("the Commission
finds that a limitation of an aggregate of two hours of walking throughout the
workday does not constitute a significant restriction as compared to the average
member of the general population").

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 22

Nor do you fall within the parameters of the Rehabilitation Act by virtue of having a record of a disability or being regarded as disabled. You have not established that you had a history of, or were misclassified as having, a mental or physical impairment that substantially limited one or more major life activity. Costello v. Mitchell Pub. Sch. Dist. 79, 266 F.3d 916, 924 (8th Cir. 2001) (citing 29 C.F.R. § 1630.2(k) ("In order to have a record of a disability, an employee's documentation must show that s/he has a history of or has been subject to misclassification as disabled.") An employee is regarded as disabled if s/he is regarded as being substantially limited in a major life activity. You have presented no evidence to support a claim that management regarded you to be substantially limited in any major life activity.

Therefore, for the reasons set out above, you did not establish that you were a person with a disability. And, because only individuals who are disabled are entitled to reasonable accommodation pursuant to the Rehabilitation Act, any claim you intended to make on that basis must fail.

Assuming, for the sake of argument, that you had shown that you were a person with a disability, you also needed to establish that you were treated disparately or subjected to harassment. The previous discussion as to whether you were subjected to an adverse employment action with regard to each of your issues also applies to this discussion. Further, as noted in detail above, you failed to identify any similarly situated individual who was treated more favorably with regard to any of the issues you raised. Although you listed several individuals, you provided absolutely no details which would establish that they were similarly situated to you but treated more favorably.

You also claimed that you were subjected to harassment and that management created a hostile work environment. However, as set out in detail above, the incidents about which you complained, even when taken together, did not constitute discriminatory harassment.

Consequently, for the reasons set out above, you have failed to establish a *prima facie* case of discrimination based on disability with regard to your claims that you were treated disparately, subjected to harassment, or that the Agency failed to accommodate your disability.

Retaliation. In order to establish a *prima facie* case based on reprisal, you must show that: (1) you engaged in prior protected activity; (2) the agency official was aware of your protected activity; (3) you were subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between your protected activity and the adverse action/treatment.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 23

As to the first element, you engaged in EEO activity on or about February 11, 2002, when you initiated case No. 4J-604-0056-02. (IF-2002, p.102). This was prior to the incident which gave rise to your first complaint in the instant case, which occurred on May 14, 2002. Therefore, you have fulfilled the first element of your *prima facie* case as to Case No. 4J-604-0101-02. As to Case No. 4J-604-0016-04, you engaged in protected activity on two occasions prior to the incidents which gave rise to that complaint. Those cases were the February 11, 2002 case (4J-604-0056-02), and the other case which is part of the instant complaint (4J-604-0101-02), which you initiated on May 14, 2002. (IF-2002, p.102, p.265). You have therefore fulfilled the first element of your *prima facie* case as to all of your claims addressed herein. The other elements of your *prima facie* case with regard to each of your issues are set out below.

Regarding the claim raised in your 2002 claim (that you were interrogated and harassed about being late on May 14, 2002), Mr. Fuscaldo was apparently aware that you had engaged in protected activity, but it is unclear as to when he gained that knowledge. (IF-2002, p.25). As to the third element of your prima facie case, whether you were subjected to an adverse action or adverse treatment, a detailed discussion of your allegations was described previously herein. As noted, you claimed that your route had been adjusted, that you had trouble delivering it timely, and that when you returned late to the office, you were you were screamed at by Mr. Fuscaldo and asked to fill out a form for being late. (IF-2002, p.15). You also said that when you called to inform Mr. Fuscaldo that you would be late, he would hang up the phone, and that when you returned late, he turned out the lights on you. (IF-2002, p.15). As above, you cited only one instance of being told to fill out a form for being late. You said that others were late without being asked to fill out forms, but you did not identify any of those individuals by name. Nor did you provide any details or other evidence in support of your assertion that Mr. Fuscaldo screamed at you, hung up the phone, or turned out the lights. Consequently, as noted previously, your assertions are unsupported by any evidence; you have therefore failed to show that you were actually subjected to any adverse action or treatment. As to the fourth element, your prior EEO case (which was initiated in February 2002) was resolved on April 05, 2002 or August 16, 2003.[11] Therefore, your prior EEO case was resolved either very shortly before the incident about which you complain or was still pending at the time. Consequently, you were able to establish a causal connection by way of the close temporal proximity between your prior protected

---

[11]     A handwritten notation in the Investigative File for Case No. 4J-604-0101-02 stated that the case was resolved through ADR on April 05, 2002. (IF-2002, p.102). However, the iComplaints printout in the Investigative File for Case No. 4J-604-0016-04 shows a closure date of August 16, 2003, for your prior EEO case.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 24

activity and the incident about which you complained.    (IF-2002, p.102).
However, because you did not show that you were subjected to any adverse
treatment, you failed to establish a *prima facie* case of reprisal on this issue.

As to the claims raised in your 2004 complaint, Mr. Fuscaldo was aware
that you had engaged in prior protected activity due to his involvement in the
issue outlined above, which occurred in 2002. Mr. Kavanaugh became aware of
your prior protected activity in January or February 2004 when he was contacted
to participate in a hearing. (IF-2004, Aff. of P. Kavanaugh, p.4). And, because
one of your 2002 cases (4J-604-0101-02, the other complaint in the instant case)
was pending at the time of the incidents which gave rise to your 2004 complaint,
it will be presumed that you have established a causal connection between your
prior protected activity and those claims. The third element of your *prima facie*
case as related to each of the issues in your 2004 complaint is discussed below.

Regarding your claim that you reported for work on September 30, 2003,
with a light duty form but were not given an assignment, as described in detail
above, Mr. Fuscaldo said you did not provide him with documentation on
September 30, 2003, which would permitted you to perform light duty work;
rather you were still subject to a prior medical document which indicated you
were incapacitated. (IF-2004, Aff. of J. Fuscaldo, p.1-2; Aff. of P. Kavanaugh,
p.1-2). Mr. Fuscaldo's adherence to your medical limitations did not subject you
to an adverse action or adverse treatment, therefore, you failed to establish the
second element of your *prima facie* case of reprisal.

Your next claim was that you were rudely told by Mr. Kavanaugh to stop
talking to a co-worker on October 20, 2003, and that you asked to skip lunch that
day so you could leave early, but that your request was denied. (IF-2004, Aff. of
Complainant dated 7/20/04, p.2). Even if your version is accurate and Mr.
Kavanaugh was rude in this very brief exchange, it does not constitute adverse
treatment. Further, as set out previously, despite your assertion to the contrary,
you were allowed to skip lunch on October 20, 2003 and leave work early. IF-
2004, Aff. of P. Kavanaugh, p.1-2; PS Form 3971 dated October 20, 2003). You
have therefore failed to establish that you were subjected to adverse treatment
as to this issue.

Your next claim is that you were instructed to participate in a fitness-for-
duty examination. (IF-2004, Aff. of C dated 7/20/04, p.3). That examination was
ordered by Dale Schultz in the Injury Compensation Office. (IF-2004, Letters
dated October 28 and 31, 2003. There is no evidence that Ms. Schultz, who
works at the Central Illinois District Office, was aware of your prior participation in
EEO activity.  Therefore you have failed to establish a *prima facie* case of
reprisal with regard to your claim that involving the fitness-for-duty examination.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 25

You also claimed that on December 22, 2003, management instructed you to leave at about 1:00 p.m. because there was no work for you to perform within your limitations, and that subsequently, you were only given 2-3 hours of work per day. (IF-2004, Aff. of Complainant dated 7/20/04, p.3, n.15). Other than your statement, you provided no evidence that there was work available within your limitations during this time period.[12] Management's decision to provide you with work that did not violate your physical restrictions does not constitute adverse treatment.

Finally, you said that on May 18, 2004, Mr. Fuscaldo told you that you could go home because he was going to have another employee perform a particular task because she needed the hours. (IF-2004, Aff. of Complainant dated 7/16/04, p.1, n.3). As noted above in detail, you had entered into an agreement with management which outlined the light duty work you would be able to perform. (IF-2004, Letter dated February 04, 2004, signed by Carla Hill, Rob Whitehead, and Patrick Kavanaugh). Management's decision not to have you perform the particular task at issue, on one day, was in compliance with the agreement and did not constitute adverse treatment.

When taken together, all of the incidents about which you complained did not constitute harassment or comprise a hostile work environment, based on reprisal. As set out in detail previously, you have not established that your work environment was permeated with intimidation, ridicule, or insult. Work-related discussions with employees and a few remarks, even when those remarks may be considered somewhat impolite by the employee, do not constitute harassment. The six or seven incidents you identified, which occurred over the span of approximately two years, were not so objectively offensive as to alter the terms or conditions of your employment and therefore do not rise to the level of discriminatory harassment.

For the reasons set out above, you failed to establish that you were subjected to retaliation as to any of your claims.

## MANAGEMENT'S LEGITIMATE NON-DISCRIMINATORY REASONS

Assuming, for the sake of argument, that you established a *prima facie* case of discrimination based on race, color, sex, age, disability or reprisal, management is then given the opportunity to articulate legitimate, non-

---

[12]      You said only that you were denied "hours of work "when 'light duty' work was available and that Mr. Fuscaldo "used his discretion 'not to assign' available light duty work to other employees when they were on light duty.". (IF-2004, Aff. of Complainant dated 7/16/04, p.2).

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 26

discriminatory explanations in response to your allegations of discrimination.
Those explanations follow.

You claimed that Mr. Fuscaldo "called [you] into his office to interrogate
[you] about being late" on May 14th, and that since he made an adjustment to
your route on May 06, 2002, he harassed you about being late returning to the
office. (IF-2002, p.274, 263, 265). Mr. Fuscaldo explained that your route was
only realigned, not adjusted, and that you made the same deliveries as before,
just in a different order. (IF-2002, p.25). Although he did not specifically recall
the May 14th incident, he said that you were "probably called into the office to
discuss [your] poor job performance and [your] not meeting expectations." (IF-
2002, p.25). Mr. Fuscaldo went on to explain that the computer calculates the
amount of time employees should take to complete their route based on input
volumes and, unless something out of the ordinary occurs, Carriers should return
from their routes in a timely manner. (IF-2002, p.26-27). He noted that if a
Carrier was unable to make his or her projected time, they should have
discussed that with management before they left the office, and if something
unusual happened on the route, they should have called the office. (IF-2002,
p.27). Mr. Fuscaldo said this should not have happened very often, but that you
were "calling nearly every day." (IF-2002, p.27; Exh. 9). With regard to mail
volume, Mr. Fuscaldo said all mail is distributed daily to the Carriers and that
neither your route nor Mr. Gosciej's route "get very much mail at any time." (IF-
2002, p.27).

In response to your claim that Mr. Fuscaldo "always turns the lights out on
[you] only," Mr. Fuscaldo stated that on one occasion you returned "much later
than the other 12 carriers," and that he needed to leave to take your "outgoing
mail to another office whose truck had not already left" so "[a]s soon as [you]
return[ed], [he] shut the lights and made the required daily EXFC call to save
time." (IF-2002, p.15, n.F; p.27).

Section 112.2 of Handbook M-41 calls for employees to provide reliable
and efficient service and to obey the instructions of their managers. (IF-2002,
p.125). Additionally, management has the right to direct employees in the
performance of their duties and members of management are obligated to
maintain the efficiency of the operations to which is it entrusted. (IF-2002,
p.129). Mr. Fuscaldo's explanation, that he called you into the office to discuss
your poor job performance, and that he turned out the lights in order to deliver
your outgoing mail to another facility, is in conformance with his responsibilities
as a manager, and constitutes a legitimate, non-discriminatory explanation for his
actions.

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 27

As to your next claim, you said that on September 30, 2003, Mr. Fuscaldo and Mr. Kavanaugh told you that you could not work until you "had more documentation" from your doctor. (IF-2004, Aff. of Complainant, p.1, n.4). Both Mr. Fuscaldo and Mr. Kavanaugh stated that you did not present a light duty request on September 30, 2003. (IF-2004, Aff. of P. Kavanaugh, p.1-2, Aff. of J. Fuscaldo, p.1-2). You had previously submitted a leave request, dated January 08, 2003, requesting 48 hours of annual leave for the time period of September 29, 2003, through October 05, 2003. (IF-2004, PS Form 3971 dated 01/08/03). That request was approved by Mr. Fuscaldo on September 24, 2003. (IF-2004, PS Form 3971 dated 01/08/03). Then, on September 25th, five days prior to the date in question, you presented Mr. Kavanaugh with a document that stated you were completely incapacitated to work until October 05, 2003, due to a medical condition, and you submitted another PS Form 3971 in which you noted "cancel vacation." (IF-2004, NALC Form 2 – Family and Medical Leave Act of 1993 dated September 19, 2003; PS Form 3971 dated 09/15/03). You requested, and were granted, sick leave for the period of September 30, 2003, through October 05, 2003, noting in the "remarks" section that you needed "[t]ime off for recurrence of back injury." (IF-2004, PS Form 3971 dated September 30).[13] Based on your medical documentation in which it was noted that you were incapacitated through October 05, 2003, arrangements had been made to cover your route. (IF-2004, Aff. of J. Fuscaldo, p.1-2). Inexplicably, however, you reported for work on September 30, 2003, clocked in and went to your case, where the person who had been scheduled to cover your route was already working. (IF-2004, Aff. of J. Fuscaldo, p.1-2). Mr. Fuscaldo called Mr. Kavanaugh, who instructed him to send you home as the documentation you had provided indicated you were totally incapacitated. (IF-2004, Aff. of P. Kavanaugh, p.1-2, Aff. of J. Fuscaldo, p.1-2). Management's decision not to allow you to perform duties when they believed, based on previously submitted medical documentation, that you were incapacitated, constitutes a legitimate, non-discriminatory explanation for their actions.

With regard to your claim that you were told not to talk, Mr. Kavanaugh said that on the day in question, you were interfering with the daily functions of the window clerks, particularly Mr. Garcia,[14] and that he told you to "do [your] work diligently and quietly." (IF-2004, Aff. of Patrick Kavanaugh, p.1-2, Aff. of James Fuscaldo, p.1-2). You also claimed that on October 20, 2003, you asked Mr. Kavanaugh if you could "skip lunch and do a no lunch" so that you could "leave at 4:00 p.m. instead of 4:30 p.m." (IF-2004, Complainant's Aff., p.2, n.7).

---

[13]    This form was apparently inadvertently dated 9/30/59, which is your date of birth, rather than 9/30/03.

[14]    You were apparently involved in a personal relationship with Mr. Garcia. (Hrg. File, Case No. 06CV3105. p.62, ln.7-8).

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 28

You noted that "several other employees were leaving at 4:00 p.m." but that Mr. Kavanaugh "seemed to enjoy ordering [you] to sit in the office until 4:30 p.m., doing nothing." (IF-2004, Aff. of Complainant, p.2, n.7). Mr. Kavanaugh said, and documentation supports his statement, that you requested, and were granted, a "no lunch" on October 20, 2003. (IF-2004, Aff. of P. Kavanaugh, p.1-2; PS Form 3971 dated October 20, 2003). He further explained that on approximately 200 occasions subsequent to the date in question, you requested "no lunch," and your requests were granted. (IF-2004, Aff. of P. Kavanaugh, p.1-2). As to the denial of your request for leave, Mr. Kavanaugh explained that you requested leave for the day before a holiday and that the maximum number of employees had already requested leave when you submitted your request. (IF-2004, Aff. of P. Kavanaugh, p.2). Pursuant to Section 666.1 of the *Employee and Labor Relations Handbook*, employees are expected to discharge their assigned duties conscientiously and effectively. Your conduct, in carrying on a conversation with a co-worker, rather than devoting your full efforts to work, violated this principle.    Mr. Kavanaugh's instruction that you cease the conversation and return work was an effort to ensure your compliance with this requirement, and constitutes a legitimate, non-discriminatory explanation his actions.

Next, you alleged that Mr. Kavanaugh told you that he "thought [you were] faking [your] back injury" and that he was "ordering [you] to see 'their doctor and if [you] refused, [you] would be terminated." (IF-2004, Aff. of Complainant, p.3, n.11). Mr. Kavanaugh stated that you were instructed to report for a fitness-for-duty examination due to inconsistencies in your physical condition and medical documentation, and that it was Injury Compensation Specialist Dale Schultz, from the Central Illinois District Office, who actually instructed you to report for the examination. (IF-2004, Aff. of P. Kavanaugh, p.3). Mr. Kavanaugh explained that after your injury, you presented documentation which said your condition would linger indefinitely, you subsequently returned to full duty, but then provided documentation which indicated you were completely disabled. (IF-2004, Aff. of P. Kavanaugh, p.3). He further noted that, when you would come to the Post Office to drop off paperwork, your actions (picking up children, wearing high-heeled footwear) called into question your claim of incapacitation due to a back injury or condition. (IF-2004, Aff. of P. Kavanaugh, p.3). Mr. Kavanaugh also said that your own doctor later requested "an identical exam based on [his] observations."    (IF-2004, Aff. of P. Kavanaugh, p.3).    Fitness-for-duty examinations are to be initiated "at any time if there are unresolved questions regarding the employee's duty status."    (IF-2004, HBK EL-505, Injury Compensation, December 1995, Section 6.4). Mr. Kavanaugh's explanation, that you were instructed by the Injury Compensation Office to undergo a fitness-for-duty examination based on inconsistencies between your limitations and the

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 29

physical abilities you displayed, constitutes a legitimate, non-discriminatory explanation for management's decision.

As to your claim that, on December 22, 2003, you were moved to light duty and not given eight hours of work each day, as both Mr. Fuscaldo and Mr. Kavanaugh stated, light duty work is provided to employees with non-work-related injuries or conditions and limited duty work is provided to employees with on-the-job injuries or conditions. (IF-2004, Aff. of J. Fuscaldo, p.1; Aff. of P. Kavanaugh, p.2). Initially, when you claimed a recurrence of your original injury, you were provided with limited duty work. (IF-2004, Aff. of J. Fuscaldo, p.1-4; Aff. of P. Kavanaugh, p.1-4). Then, when OWCP denied your recurrence, you were converted from limited duty status to light duty status. (IF-2004, Aff. of J. Fuscaldo, p.1-4; Aff. of P. Kavanaugh, p.1-4). Mr. Kavanaugh was notified of the OWCP denial by Ms. Schultz from the Central Illinois District Office on December 19, 2003. (IF-2004, Aff. of P. Kavanaugh, p.3). As he explained, the *Employee and Labor Relations Manual*, Section 355.14, states that there are no guarantees as to the number of hours an employee on light duty may receive. (IF-2004, Aff. of P. Kavanaugh, p.3). Distributing light duty work based on the availability of work, and giving priority to individuals who have on-the-job injuries, rather than to employees who have sustained temporary off-duty conditions, complies with Postal Service policy and constitutes a legitimate, non-discriminatory explanation.

Finally, you said that on May 18, 2004 you were told by Mr. Fuscaldo to go home because no light duty work was available. (IF-2004, Aff. of Complainant dated July 16, 2004, p.1). Mr. Fuscaldo asserted that he has never instructed you to stop working and go home because he had no additional light duty work assignments for you to perform. (IF-2004, Aff. of J. Fuscaldo, p.1). He explained that he has, however, instructed you to allow Michelle Jones, the part-time flexible employee who carries your route every day, to pull the route down in order to give you more time to handle the Express Mail duties. (IF-2004, Aff. of J. Fuscaldo dated July 13, 2004, p.1). Management has the right to assign work and to efficiently operate the facility. Their decisions as to the distribution of work assignments, under the circumstances described, comply with their obligations as managers and w\ere legitimate, non-discriminatory explanations for their actions.

## PRETEXT

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 30

At this point, you have the burden of proving that management's stated reasons are not only pretext, but are pretext for discrimination. <u>Tincher v. Wal-Mart Stores, Inc.</u>, 118 F.3d 1125, 1129 (7th Cir. 1997).

With regard to your 2002 complaint, you said that you have heard Mr. Fuscaldo refer to blacks as "nigger." (IF-2002, p.15). However, on the same page of your affidavit, you explained that Mr. Fuscaldo treats Mr. McGee, whose race is African American, favorably in that he is frequently late reporting for work but does not get disciplined, he is granted auxiliary assistance when requested, and if he "calls in saying he is going to be late, management say [sic] okay and that's it." (IF-2002, p.15). Your assertion that Mr. Fuscaldo used derogatory language to refer to African-Americans is at odds with your statements that he treated Mr. McGee, an African-American, favorably.

You also stated that race was a factor in that "Jim and Patrick are white and play favorites as if they are 'masters.'" (IF-2004, Aff. of Complainant dated 7/16/04, p.2). You claimed that a union steward "commented that [your] race, African American causes problems for Jim, because he expects [you] to 'just go along with their program' and you don't." (IF-2004, Aff. of Complainant dated 7/16/04, p.2). However, you also said than Mr. Fuscaldo "plays favorites" and he "also favors some black employees over others." (IF-2004, Aff. of Complainant dated 7/16/04, p.3). Your general statements that race was a factor, without any evidence in support thereof, do not establish that management's explanations are untrue and that the reason for management's actions is because you are African-American.

As to your sex, you said that "Jim made it clear to Marge Nemeth that [you] being a female bothers him as well because [you] defend yourself and they don't like that [you] fight back." (IF-2004, Aff. of Complainant, dated 7/16/04, p.3). You said that Mr. Fuscaldo "has made comments about [you] being a single mother and [your] lifestyle" and that "[a]ll his negative comments are related to [you] being a female, unmarried, working full time and raising two boys." (IF-2004, Aff. of Complainant dated 7/16/04, p.3). You also stated that you were assigned more work by Mr. Fuscaldo after you were hurt, and that he "favor[ed] the other female workers with less work [and] gave [you] more." (IF-2004, Aff. of Complainant dated 7/16/04, p.3). First, your assertion that you were given more work after your injury conflicts with your claims that you were not given light duty assignments, that you were told to sit without having work to perform, that you were moved to light duty and not given a full days work, and that you were told to go home because no light duty work was available. Second, by your own statement, Mr. Fuscaldo "favored" some females; this does not support your assertion that he discriminated against you because you are female. Your general statements, unsupported by any evidence, do not establish

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 31

that management's explanations are untrue and that you were treated differently because of your sex.

When asked why you believed your disability was a factor in management's treatment of you, you said it was because Mr. Kavanaugh forced you to go to the doctor so he could check your back, that management believed you were "making it up," and you were informed you would be terminated if you did not have the examination. (IF-2004, Aff. of Complainant dated 7/16/04, p.2). Even if this were accurate, it would not refute management's explanation. That is, you did not show that management did not have reason to inquire as to your fitness for duty, based on inconsistencies between your medical documentation and your apparent physical abilities.

With regard to why your prior EEO activity was a factor, you refuted management's explanations by stating that you believed "it was retaliation against [you], and favoritism to others" who had not spoken up against management or complained about "unfair and discriminatory treatment." (IF-2004, Aff. of Complainant dated 7/16/04, p.2). You said specifically that this was evident when "Suzanne [who is] the 204B for our office" was given more hours because she was considered part of the management team. (IF-2004, Aff. of Complainant dated 7/16/04, p.2). Even if it were true that the 204B was given more hours, that would not establish that management's explanations were untrue because the 204B performed different duties than you performed.

As set out in detail herein, management has articulated legitimate, non-discriminatory explanations for their actions and you have not shown those explanations to be pretext for discrimination.

## CONCLUSION

After carefully considering the entire record, and applying the legal standards outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); Hazen Paper Company v. Biggins, 507 U.S. 604 (1993) (applying the standard to cases brought under the ADEA); Prewitt v. U.S. Postal Service, 662 F .2d 292 (5th Cir. 1981) (applying the standard to cases brought under the Rehabilitation Act); and Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F .Supp. 318 (D.Mass), aff'd 545 F .2d 222 (1st Cir. 1976) (applying the standard to reprisal cases); the evidence does not support a finding that you were subjected to discrimination as alleged. Consequently, this complaint is now closed with a finding of no discrimination.

## APPEAL TO EEOC

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 32

You have the right to appeal the Postal Service's final decision to the Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848, within 30 calendar days of your receipt of this decision. You must use EEOC Form 573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief were also submitted to the National EEO Investigative Services Office, NEEOISO – FAD, USPS, P. O. Box 21979, Tampa, FL 33622-1979. You are advised that if you file your appeal beyond the 30-day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. 1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if you are dissatisfied with the Postal Service's decision in this case, you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be styled **Carla H. Hill v. John E. Potter, Postmaster General**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. Your application must be filed within the same 90-day time period for filing the civil action.

Sally A. Trant                                        Date:  March 5, 2008
EEO Services Analyst
NEEOISO
P. O. Box 21979
Tampa, FL 33622-1979

**Enclosure:**  EEOC Appeal Form 573

Final Agency Decision
Carla H. Hill
Agency Nos. 4J-604-0016-04 and 4J-604-0101-02
EEOC No. 210-2004-00152X
OFO No. 0120072519
Page 33

cc:

Complainant
Carla Hill
18119 Charlemagne Ave.
Hazel Crest, IL 60429-2226
                    **Delivery Confirmation No. 0307 3330 0000 0863 2417**

Representative
Diana Hayes
P.O. Box 188
Bedford Hills, IL 60499-0188
                    **Delivery Confirmation No. 0307 3330 0000 0863 2424**

District Manager, Human Resources
USPS - Central Illinois District
6801 West 73rd Street
Bedford Park, IL 60499-9994

Carlton M. Hadden, Director
Office of Federal Operations
U.S. Equal Employment Opportunity Commission
P.O. Box 19848
Washington, DC 20036-9848

Heather R. Sloan, Esq.
USPS Law Department
Great Lakes Area
222 S. Riverside Plaza, Suite 1200
Chicago, IL 60606-6105

Regional Manager, EEO Compliance and Appeals
Great Lakes Area
244 Knollwood Drive, 2nd Floor
Bloomingdale, IL 60117-3010

## NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**OFFICE OF FEDERAL OPERATIONS**
P.O. Box 19848
Washington, DC 20036

**Complainant Information: (Please Print or Type)**

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ____Yes; Date Received _____(Remember to attach a copy)<br>____No<br>____This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any <u>other</u> administrative or collective bargaining procedures? | ____No<br>____Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ____No<br>____Yes **(Attach a copy of the civil action filed)** |

**NOTICE:** Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |

**EEOC Form 573 REV 1/01 (page 1 of 1)**

# *PRIVACY ACT STATEMENT*

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, January 2001
2. **AUTHORITY**: 42 U.S.C. § 2000e-16
3. **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.
4. **ROUTINE USES**: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

**Send your appeal to:**

**The Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, D.C. 20036**

EEOC Form 573 REV 1/01 (page 2 of 2)