IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLA HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  07 CV 6835 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| JOHN E. POTTER, United States Postal ) | |
| Service, | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Carla Hill brings an action against Defendant John E. Potter ("Defendant"), Postmaster General of the United States Postal Service ("USPS"), alleging disability discrimination[1] in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*., and retaliation in violation of the Rehabilitation Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  For the reasons stated below, the motion is granted.

**I.     FACTS**

The material facts below are generally undisputed and taken from Defendant's Statement of Undisputed Material Facts ("DSOF") and Plaintiff's Statement of Additional Facts ("PSOF"); the Court will note where there are disputes about material facts.

Plaintiff Carla Hill ("Plaintiff") has worked at the Hazel Crest Post Office as a letter carrier since 1998.  She was promoted to a full-time carrier position in 1999.  DSOF ¶ 2.  Steve

---

[1] Plaintiff's Third Amended Complaint also included a cause of action for age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*  However, it appears that she has dropped her age discrimination claims, as she offers no response to Defendant's motion for summary judgment on these claims.  Accordingly, summary judgment on Count II is granted.

1

Schneider was apparently[2] Postmaster of the Hazel Crest facility when Plaintiff began working there. At some point thereafter, Karen Myuskens became Postmaster and remained in that position until July 2003. P.'s Mem. 1. Patrick Kavanaugh became Postmaster of the facility in July 2003, and he and supervisor James Fuscaldo supervised Plaintiff from then until the spring of 2006. *Id.* Syed Ahmed then briefly took over as Postmaster, followed by Beverly Greene in May 2006. DSOF ¶ 25.

During the course of Plaintiff's employment at the Hazel Crest facility, she sustained several on-the-job injuries. Plaintiff injured her back, shoulder, and ankle by falling while delivering or carrying mail or while in the facility parking lot. PSOF Ex. 2, Declaration of Carla Hill. Plaintiff's injury claims are supported by Duty Status Reports from the Department of Labor's Office of Worker's Compensation Program ("OWCP"). PSOF Ex. 23. After injuring her back in November of 2002, Plaintiff was subsequently placed on "limited duty." PSOF ¶ 5. Hill's physician recommended that she not be subject to repetitive twisting, turning, lifting or sitting for prolonged periods of time and restricted her to lifting no more than 15 pounds. *Id.* at ¶ 6. "Limited duty" is work provided to an employee who suffered an injury that is accepted by the OWCP as work-related. The Postal Service is required to provide work for an employee who has suffered a work-related injury. *Id.* at ¶ 7.

In September of 2003, Plaintiff told her supervisors that she had suffered another injury. Hill Dep. 34:18-35:6. Kavanaugh directed her to fill out a form for a recurrence of injury (rather than a new injury). *Id.* Postal injury compensation specialist Dale Schultz then instructed Plaintiff to take a Fitness for Duty Examination. DSOF ¶ 12. Kavanaugh controverted Plaintiff's injury claim, sending correspondence to Schultz advising him to "act swiftly and

---

[2] The exact terms of service of Hazel Crest's Postmasters are not clear from the parties' submissions.

2

appropriately in regards to Carla Hill" because "[t]his . . . exceeds any proximity of being a legit injury."  PSOF Ex. 26, 27.  He doubted the extent of Plaintiff's injuries, describing them as "[minor] contusions . . . only needing what [Plaintiff] sought, an antiseptic to prohibit any secondary infection."  PSOF Ex. 27.  He noted that Plaintiff had "demonstrated none of the restrictions previous to being informed this was an accepted claim under Department of Labor Standards."  He also noted that Plaintiff was "at the time of the injury only working two hours daily and collecting unemployment to subsidize her income."  *Id.*  The OWCP denied Plaintiff's injury claim.  DSOF ¶ 13.

As a result, Plaintiff was shifted from limited duty to light duty status.  In contrast to limited duty status, "light duty" work is provided to an employee who suffers a non-work-related injury.  There is no guarantee of work hours for an employee who is on light duty.  *Id.* at ¶ 9. Management has discretion to determine the number of hours to give employees on "light duty," and is required to "show the greatest consideration for [employees] requiring light duty or other assignments, giving each request careful attention, and reassign such employees to the extent possible in the employee's office."  PSOF Ex. 28, USPS Employee Labor and Relations Manual Section 355.  Employees on "light duty" are only expected to perform assignments within the scope of their medical restrictions. From December 2003 through July 2004, Plaintiff was frequently sent home with less than eight hours of work per day, resulting in a total of 618 hours of Leave Without Pay ("LWOP") totaling $12,000 in unpaid wages , while 821 hours of overtime were awarded to other employees at the Hazel Crest facility.  PSOF ¶ 21.  Additionally, Plaintiff also claims that she was denied a promotion to a Part-Time Flexible Sales, Services, and Distribution Associate ("window clerk") position on three occasions; the facts surrounding these alleged denials of promotion are discussed in greater detail below.

In addition, Plaintiff filed Equal Employment Opportunity ("EEO") complaints on or about June 19, 2002, March 27, 2004, May 4, 2005, and June 23, 2005. Each of these complaints named Fuscaldo, among others, as a person who had discriminated against her; the March 27 complaint also named Kavanaugh. Plaintiff had also contacted an EEO specialist on February 15, 2002, but that case was settled before she actually filed a complaint. Plaintiff contacted an EEO specialist on May 23, 2006, but withdrew before actually filing a complaint on that occasion. PSOF ¶ 5.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252; *see also Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). This standard of review is applied to employment discrimination cases with "added rigor." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### III. ANALYSIS

#### a. Discrimination Under the Rehabilitation Act

In Count I of the Complaint, Plaintiff alleges that Defendant discriminated against her based on her disability by thrice failing to promote her to a window clerk position and denying her work hours (i.e. sending her home after less than eight hours of work per day). Third Am. Compl. 6.

The Rehabilitation Act "prohibit[s] an employer from discriminating against a qualified individual with a disability because of the disability." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (citations omitted). To survive a summary judgment motion on a Rehabilitation Act claim, an employee alleging discrimination must show incidents of illegal discrimination through either direct proof or indirect proof. *Peters v. City of Mauston,* 311 F.3d 835, 842 (7th Cir. 2002); *Patmythes v. City of Janesville*, 181 Fed. Appx. 596, 597, 2006 WL 1476150 at *2 (7th Cir. 2006). Here Plaintiff does not claim to have any direct evidence of discrimination, and instead elects to proceed under the indirect method of proof.

The indirect method of proof for discrimination claims under the Rehabilitation Act is the same *McDonnell Douglas* burden-shifting approach used for Title VII and Americans with Disabilities Act discrimination cases, where the plaintiff bears the initial burden of establishing a *prima facie* case of intentional discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973); *Hall v. Bodine Elec. Co.*, 276 F.3d 345, (7th Cir. 2002); 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990"); *Patmythes*, 181 Fed. Appx. at 597. Once the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden

5

of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). If the employer satisfies that burden, the presumption of discrimination is rebutted, and the burden shifts back to the plaintiff to persuade the trier of fact either directly that a discriminatory reason more likely motivated the action or indirectly that the employer's articulated reason for the employment action is unworthy of credence and is but a mere pretext for intentional discrimination. *Id*.

"To establish a *prima facie* case under the Rehabilitation Act, [Plaintiff] must prove that she (1) falls within the ADA's statutory definition of "disabled," meaning that she has a "physical or mental impairment that substantially limits a major life activity, a record of such impairment, or [is] regarded as having such impairment," *see* 42 U.S.C. § 12102(2); (2) is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) has suffered an adverse employment decision because of the disability." *Garg*, 521 F.3d at 736 (7th Cir. 2008) (citations omitted).

### 1. Plaintiff is not disabled within the meaning of 42 U.S.C. § 12102

A person is substantially limited within the meaning of the ADA if he is: (1) unable to perform a major life activity that the average person can; or (2) significantly restricted as to the condition, manner or duration under which he can perform a major life activity as compared to the average person. 29 C.F.R. § 1630.2(j)(1); *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 937 (7th Cir. 2007). "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Plaintiff argues that she is "substantially limited in the major life activity of lifting minimal amounts of weight and the major life activity of reaching." PSOF ¶ 3. She alleges that during the time period covered by the events of this case, she has been "restricted to lifting 10 pounds continuously and 30 pounds intermittently." PSOF ¶ 4. The evidence cited for these statements is Plaintiff's affidavit asserting the same, and ten Duty Status Reports from the OWCP dating from November 2002 until August 2007. PSOF Ex. 2, 23. She states that "when she goes grocery shopping, she cannot reach shelves above her shoulders, and she generally needs the assistance of the store employees or her son to get the groceries into and out of her car; she is unable to shovel snow or mow the lawn; she has difficulty doing laundry, as she cannot bend to reach into the machines, and she cannot carry many articles of clothing at once." PSOF Ex. 2.

Even viewing this evidence and Plaintiff's affidavit in a light most favorable to the nonmoving party, this Court is unable to conclude that there is a genuine issue of material fact as to whether Plaintiff is disabled. First, the evidence of her disability is limited. The Duty Status Reports document injuries that employees suffer while on the job. Half of the form requires the employee's supervisor to specify the employee's usual work requirements (required tasks, whether those tasks are performed continuously or intermittently, and for how many hours per day); the other half of the form is filled by a physician who describes how the reported injury restricts the employee's ability to perform those requirements. PSOF Ex. 23. The Duty Status Reports indicate that Plaintiff's job requires her to lift 15 pounds continuously and 30 to 35 pounds intermittently for six hours per day.[3] *Id.*, 2768, 2800, 2604, 2831, 2941, 3563. Some of

---

[3] Two Duty Status Reports from March and August 2007 indicate that Plaintiff's job requires her to lift 35 pounds continuously and 70 pounds intermittently. PSOF Ex. 23, 5857, 3498. There is

7

the Duty Status Reports do indicate that, at times, Plaintiff's injuries restricted her to lifting about 5-10 pounds continuously and 8-30 pounds intermittently, but the reports do not indicate how long these limitations persisted. In fact, most advise that Plaintiff resume work either on the day of or shortly after the reported injury. *See, e.g.* PSOF Ex. 23, 2768, 2800, 2604, 3020, 2941, 3563, 5857, 3498. Plaintiff has not produced any evidence from a physician to show that she continues to suffer limitations on her ability to perform manual tasks.

Furthermore, even if Plaintiff is limited in the way that she asserts (being restricted to "lifting 10 pounds continuously and 30 pounds intermittently"), these limitations do not amount to significant restrictions on her major life activities. The Seventh Circuit has said as much: "We doubt whether lifting more than 10 pounds is [a major life activity] . . . The number of Americans restricted by back problems to light work is legion. They are not disabled." *Mays v. Principi,* 301 F.3d 866, 869 (7th Cir.2002) (doubting whether "a back injury that merely limits a person's ability to lift heavy objects creates a disability within the meaning of federal disability law"). Plaintiff has not shown that a person who can lift 10 pounds continuously and 30 pounds intermittently is significantly more restricted than an average person. Thus, Plaintiff does not meet the definition of disabled under the Rehabilitation Act. Summary judgment on Count I is granted in favor of Defendant.

### b. Retaliation

Count III alleges that Defendant retaliated against Plaintiff for filing EEO complaints, in violation of the Rehabilitation Act and Title VII. An employee bringing a retaliation claim must present either direct evidence of discrimination or indirect evidence under the burden-shifting

---

no explanation of why Plaintiff's job requirements would have changed in 2007. In any event, the change is irrelevant to the determination of whether Plaintiff is disabled.

analysis prescribed by *McDonnell Douglas*. *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005). Plaintiff proceeds under the latter. Under such an approach, Plaintiff must first establish a *prima facie* case of retaliation by offering evidence of the following: (1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action. *Burks v. Wisconsin Dept. of Transp.*. 464 F.3d 744, 759 (7th Cir. 2006). Defendant does not challenge whether Plaintiff has met the first and third prongs, but argues that Plaintiff suffered no adverse employment decisions and that Plaintiff can bring forth no similarly situated comparators. Plaintiff alleges that Defendant subjected her to two major adverse employment actions[4]: (1) she was denied work hours; and (2) she was not promoted on three separate occasions.

### i. Work Hours

The Seventh Circuit has broadly defined "adverse employment action." "It is not limited solely to loss or reduction of pay or monetary benefits, but can encompass other forms of adversity." *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 703 (7th Cir. 2001). "Nevertheless, not everything that makes an employee unhappy is an actionable adverse action." *Id.* "An adverse employment action is one that significantly alters the terms and conditions of the employee's job . . . . The action must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Hancock v. Potter*, 531 F.3d 474, 478 (7th Cir. 2008). Plaintiff claims that she suffered an adverse employment action when Defendant failed to provide full-

---

[4] Plaintiff also argues that she suffered numerous perceived slights (e.g., having been disciplined by her supervisors and then having that discipline rescinded; Kavanaugh's having controverted her injury claims) but does not claim, in her summary judgment response, that these events should be considered adverse employment actions.

9

time work for her at the facility. From December 2003 through July 2004, Plaintiff was frequently sent home with less than eight hours of work per day, resulting in a total of 618 hours of Leave Without Pay ("LWOP") totaling $12,000 in unpaid wages , while 821 hours of overtime were awarded to other employees at the Hazel Crest facility. PSOF ¶ 21.

Plaintiff admits that she was the only employee at the Hazel Crest facility on light duty work. DSOF ¶ 15. She likewise admits that Defendant was obligated to provide eight hours of work with pay only to *limited* duty employees, whereas there is no guarantee of work hours for an employee who is on *light* duty. DSOF ¶ 8, 9. Plaintiff has not shown that that Defendant's actions significantly altered the terms and conditions of her light duty employment. Plaintiff asserts that more than 99.5% of the 821 hours of overtime were given to employees who had not filed EEO complaints against Kavanaugh and Fuscaldo. PSOF ¶ 22. However, Plaintiff has failed to provide evidence that she applied for overtime work or was qualified for it, whether the 821 hours of overtime were awarded to employees in the same job position as her, or whether those employees awarded overtime had filed EEO complaints against other supervisors in the facility. Plaintiff has therefore failed to meet even the low standard for a *prima facie* showing that her 618 hours of LWOP constituted an adverse employment action or that other employees who had not filed EEO complaints were spared from similar reductions in work hours.

### ii. Failure to Promote

Plaintiff twice submitted written requests to transfer to the window clerk position: on February 1, 2000, she wrote to Postmaster Steve Schneider a short note stating "I am interested in becoming a clerk with the next available opening." On March 11, 2003, she wrote to Postmaster Karen Myuskens a similar note and also documented her ongoing interest in the position ("In the event that you don't hire anyone now or decide on an accessed window clerk, I

am still interested in the very next available open position"). PSOF ¶ 27, Ex. 13, 14. Plaintiff's interest in the position was also documented as part of a 2004 settlement agreement with the USPS, and Fuscaldo was aware that Plaintiff was interested in the window clerk position. PSOF ¶ 29.

On three occasions, window clerk positions became available in the Hazel Crest facility. Each time there was an opening, the window clerk position was given to another USPS employee. In August 2005, Fuscaldo gave the position to Suzanne Hankins. PSOF ¶ 30. In June 2006, then-Postmaster Syed Ahmed appointed Carol Mottley to the position; prior to her placement, Mottley did not work at the Hazel Crest office. PSOF ¶ 31. Fuscaldo made the decision to hire Mottley, and Ahmed merely implemented the decision. Ahmed Dep. at 27:23-28:8 ("I didn't submit anything to even request to human resources in the case of Carol Mottley. What happened was I got a call from human resources that, you know, here is a candidate on the E-assignment. I guess my predecessor did that, whatever the paperwork they had to do.") In March 2007, then-Postmaster Beverly Greene selected Kendra McGhee for the position. PSOF ¶ 26.

The denial of a promotion to the window clerk position qualifies as an adverse employment action. *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) ("[A]n adverse employment action is a significant change in the claimant's employment status such as hiring, discharge, *denial of promotion*, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits.") (emphasis added). Defendant argues that the denial of the promotion was not adverse because Plaintiff failed to properly apply for it, but these arguments go toward pretext, not Plaintiff's *prima facie* burden of proving that the action taken was adverse.

11

Plaintiff has also shown that there were similarly situated employees who did not file EEO complaints and who did not suffer this adverse employment action. The similarly situated requirement in *McDonnell Douglas* entails a showing that the Plaintiff and the comparator employee dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 404-05 (7th Cir. 2007) (citations omitted). This requirement is a flexible one that considers "all relevant factors, the number of which depends on the context of the case," and is not "an unyielding, inflexible requirement that requires near one-to-one mapping between employees—distinctions can always be found in particular job duties or performance histories or the nature of the alleged transgressions." *Humphries*, 474 F.3d at 405. There is no requirement that a plaintiff show complete identity to a "similarly situated" employee; rather, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation. *Id.* The employees whom Defendant ultimately hired for the window clerk positions had not filed EEO complaints. PSOF ¶ 33. Plaintiff had more seniority as a carrier than Hankins and McGhee. PSOF ¶ 26. Defendant argues that the Hankins, a carrier at the time of her application for the clerk position, is not a suitable comparator had a broken ankle which restricted her from carrying mail and walking; and that Mottley is also unsuitable because had already been working as a window clerk, albeit at a different office. Defs.' Reply 4. However, that would leave McGhee, a less senior carrier in the same facility who had not filed an EEO claim, as a suitable comparator.

Defendant's primary argument for summary judgment on this claim is that Plaintiff had not properly applied for the positions at all. If true, Plaintiff's failure to properly apply for the position would be a legitimate, nondiscriminatory reason for Defendant's decision not to promote Plaintiff. Plaintiff, as a carrier, was part of the collective bargaining unit for carriers; window clerks were members of a different collective bargaining unit. DSOF ¶ 17. Defendant claims that USPS has a policy (the "Policy") of requiring postal employees who want to transfer to a different collective bargaining unit to submit a written request to each new postmaster or OIC, with the first employee submitting such a request appointed to the position. Defs.' Mem. 7. Since Plaintiff had not submitted written requests for the position to the postmasters in charge when the positions in 2005, 2006, and 2007 became available, she had not applied to those positions in accordance with the Policy.

Plaintiff argues that that Defendant's offered reason for not transferring her to the clerk craft is pretext, and contends that the Policy does not exist. Defendant admits there is no written documentation of the Policy in any of the discovery produced by him. In response to an interrogatory request for a description of Defendant's process for hiring window clerks, Defendant did not mention such a "first come, first served" rule nor any requirement that the applicant's interest be submitted in writing. PSOF ¶ 24. Instead, Defendant noted that when a position becomes available in the Hazel Crest facility, "the Postmaster or Officer-in-Charge ('OIC') attempts to fill the position with any interested candidates within the Hazel Crest Post Office . . . ." PSOF Ex. 10 at 4.

However, simply the absence of written documentation of the Policy is not sufficient to meet Plaintiff's burden for demonstrating pretext. "Pretext 'means a dishonest explanation, a lie rather than an oddity or an error.' " *Hague v. Thompson Distribution Co.,* 436 F.3d 816, 823 (7th

13

Cir.2006) (quoting *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir.2000)); *see also Hudson v. Chi. Transit Auth.,* 375 F.3d 552, 561 (7th Cir.2004) ("Pretext is more than a mistake on the part of the employer; it is a phony excuse."). "Showing pretext requires '[p]roof that the defendant's explanation is unworthy of credence.'" *Filar v. Bd. of Educ. of City of Chi.,* 526 F.3d 1054, 1063 (7th Cir.2008) (quoting *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097).

Plaintiff's burden, then, is to show that the Policy does not exist, which would necessarily entail convincing this Court that the witnesses who testified to its existence are lying. Defendant's evidence of the existence of the Policy comes from the testimony of Fuscaldo and Postmaster Beverly Greene. Greene testified that "whoever requested it first" would be given the promotion, so long as the requester was qualified, and that seniority would only affect the hiring decision if more than one person requested the same position at "the same time, same day, same everything." Greene Dep. 61:14-62:6. Fuscaldo also testified that he chose the employee to fill a new window clerk opening from those who had sent him letters indicating interest. Fuscaldo Dep. 37:18-37:22.

Fuscaldo testified that by 2005 both Hankins and McGhee had sent him letters indicating their interest in the window clerk position, and he hired Hankins because she had sent her letter of interest first. Fuscaldo Dep. 37:18-39:21. Defendant has not produced any letters from other employees expressing interest in the clerk craft other than two letters from McGhee to Beverly Greene, both dated September 12, 2006. PSOF ¶ 28. However, Hankins herself testified that she sent letters to Hazel Crest supervisors Schneider, Muyskens, Zerex Veal, Kavanaugh and Fuscaldo. Hankins Dep. at 32-33, 58-59. McGhee testified that she had sent letters to Kavanaugh, Muyskens, Fuscaldo, and Greene. Plaintiff contends that because these letters were not produced, they never existed, but she has not given this Court reason to doubt the veracity of

Hankins and McGhee's testimony. Although neither Hankins nor McGhee testified directly to the point, their actions suggest that they were aware of the Policy and that they acted accordingly. Plaintiff's two earlier letters to Schneider and Muyskens also suggest that she knew about the Policy.

Plaintiff challenges the existence of the Policy, but her evidence does not suggest that Defendant followed a different hiring procedure. The alternative procedure she claims to have existed in place of the Policy—one that would entitle her to the window clerk position despite having made her interest in it known only informally, and perhaps only to non-supervisors—is no procedure at all. Plaintiff never expressed her interest directly to Beverly Greene, the Postmaster who hired Kendra McGhee to the window clerk position in March of 2007. Plaintiff has argued that her interest in the position was "common knowledge" in the office, but offers only the testimony of Mottley and McGhee (who were not supervisors) to back up this proposition, and no evidence that her supervisors were privy to this so-called common knowledge. Mottley Dep. at 30-34; McGhee Dep. at 16-17. Plaintiff also contends that Greene knew about Plaintiff's desire for the window clerk position because they had spoken in December 2006 about Plaintiff's EEO activity; Plaintiff claims they spoke then about her "ongoing desire to become a window clerk." PSOF Ex. 2 at ¶ 30. Greene's testimony contradicts Plaintiff's:

> Q: Had you ever heard about Ms. Hill's prior EEO activity before you filled your clerk position?
> A: I had heard something, you know. People talk. But I didn't know any particulars of anything, and I had chose not to get involved in anything because again, I was in a new office trying to learn the job and familiarizing myself with everything. And it had nothing to do with me
> . . .
> Q: So you never heard anybody say anything about a settlement agreement that she had entered into?
> A: No.

Greene Dep. at 54:24-55:14.  Plaintiff did not directly inform Greene of her desire to be promoted until a month after McGhee was appointed to the post.  Greene Dep. at 59, 54 ("I had no knowledge that she wanted to change crafts.").  Even if events had unfolded as Plaintiff claimed they had, Greene could not be expected to remember Plaintiff's having obliquely informed Greene of her interest in the window clerk position during a conversation about an unrelated topic months before the position opened in 2007.  An employee who hopes to be promoted must at least make her interest in the promotion clearly known; passing remarks or atmospheric "common knowledge" cannot substitute for a proper application.  A policy of requiring a written expression of interest in the position is legitimate and nondiscriminatory, and Greene's testimony (and Hankins', McGhee's and Plaintiff's actions) suggest its existence.  Plaintiff has therefore not shown that Defendant's legitimate reason for passing Plaintiff for promotion was dishonest or pretextual.  Accordingly, summary judgment is granted for Defendant on Count III.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in its entirety.

Enter:
/s/ David H. Coar
David H. Coar
United States District Judge

Dated: June 16, 2009